IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DAWN DENISE McCOMAS
Executrix of the Estate of
BILLIE PLYMALE,

      Plaintiff,

v.            CIVIL ACTION NO. 3:13-14953

KIRT THOMAS MILLER, D.P.M.

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant's Motion to Exclude the Testimony of Expert Witness Barry Singer, M.D., ECF No. 52, Defendant's Motion for Summary Judgment, ECF No. 54, and Defendant's four Motions in Limine: (1) Motion in Limine to exclude all elements of economic loss with the exception of funeral bills and out of pocket expenses, ECF No. 63; (2) Motion in Limine to exclude reference, argument or criticism concerning the tissue submitted for pathology review, ECF No. 64; (3) Motion in Limine to exclude reference to punitive damages, ECF No. 65; and (4) Motion in Limine to exclude the unilaterally conducted, unnoticed videotaped deposition of Billie Plymale, ECF No. 66.

For the following reasons, Defendant's Motion to Exclude Testimony of Expert Witness Barry Singer and Defendant's Motion for Summary Judgment are **DENIED**, Defendant's Motion in Limine to exclude elements of economic loss is **DENIED** as moot, Defendant's Motion in Limine to exclude testimony on tissue submitted for pathology review is **DENIED**, and

Defendant's Motions in Limine to exclude punitive damages and to exclude the videotaped statement by Mrs. Plymale are **GRANTED**.

## I. FACTUAL BACKGROUND

As the executrix of the estate of Billie Plymale, Plaintiff brings medical malpractice and wrongful death claims against Defendant, Kirt Thomas Miller, D.P.M. The claims arise out of Dr. Miller's treatment of Mrs. Plymale for a non-healing wound on the bottom of her foot from May 2011 through May 2012.

Throughout the relevant period, Mrs. Plymale had regular office visits with Dr. Miller allowing him to monitor changes in the wound throughout the course of treatment. In an effort to facilitate healing of the wound, Dr. Miller performed a skin graft in September 2011 and a toe resection surgery in October 2011. Dr. Miller did not biopsy the wound in the course of treatment, only referring Mrs. Plymale to a dermatologist in March 2012. Upon referral and after a biopsy, Mrs. Plymale was diagnosed with malignant melanoma in May 2012. On July 24, 2013, Mrs. Plymale died from metastatic disease related to malignant melanoma.

Plaintiff alleges that Dr. Miller failed to timely diagnose Mrs. Plymale's melanoma, thereby delaying treatment, lessening her chance of survival and contributing to her death.

## II. DISCUSSION

**A. Expert Testimony of Barry Singer and Defendant's Motion for Summary Judgment**

Pending before the Court are Defendant's Motion to Exclude Expert Testimony of Barry Singer, M.D., ECF No. 52, and Defendant's related Motion for Summary Judgment, ECF No. 54. The motions are related in that the disposition of both motions depends on whether Dr. Singer has the requisite qualifications to offer expert testimony regarding the applicable standard of care in an

action brought in federal court under West Virginia's Medical Professional Liability Act ("MPLA"). In considering these motions, the Court will first briefly explain the underlying substantive law connecting the disposition of both motions. Second, the Court will review the applicable rules of evidence determining admissibility of expert testimony. Finally, the Court will analyze the admissibility of Dr. Singer's testimony in light of those rules.

> 1. *West Virginia's MPLA requires expert testimony*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

"'[W]here the moving party has the burden—the plaintiff on a claim for relief or the

defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 822 (D. Md. 1998) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "Thus, if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Under the MPLA, in order to prevail in a medical malpractice action, a plaintiff is required to offer proof that "an injury or death resulted from the failure of a health care provider to follow the accepted standard of care." W.Va. Code § 55-7B-3(a). As dictated by statute, there are two essential elements of proof required:

(1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
(2) Such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3(a). The MPLA further requires that a plaintiff establish a defendant's failure to meet the standard of care through the testimony of "one or more knowledgeable, competent expert witnesses if required by the court." W.Va. Code § 55-7B-7(a).[1]

Because Dr. Singer is Plaintiff's only expert witness, Defendant argues—and the Court agrees—that judgment as a matter of law in favor of Defendant would be appropriate if Plaintiff's expert is not qualified to offer testimony. In the absence of testimony by Dr. Singer, Plaintiff

---

[1] The Court recognizes the possibility of exceptions to the requirement of expert testimony in a medical malpractice action, for instance, "where lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." *Farley v. Shook*, 218 W.Va. 680, 685 (W. Va. 2006). However, such exceptions were neither raised by the parties nor are applicable here.

would be unable to meet substantive statutory requirements governing the instant cause of action. In the alternative, if qualified to offer expert testimony, Dr. Singer's testimony would present genuine issues of material fact rendering summary judgment inappropriate. Thus, disposition of Defendant's summary judgment motion hinges on whether Dr. Singer is a qualified expert.

### 2. *Federal law governs admissibility of expert testimony*

As a threshold matter, the Court notes that the admissibility of expert testimony in a diversity case in federal court is governed by federal law. Particularly, Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinion testimony in federal court and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Admissibility under Rule 702 fundamentally turns on relevance and reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In order to determine whether an expert is "proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue," the Court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93. The standard for reliability is "flexible," and "the law grants a district court the same broad

latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimately reliability determination." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

In addition to these accepted rules of federal evidence, Defendant posits that the admissibility of Dr. Singer's testimony also requires consideration of statutory requirements provided in West Virginia's MPLA. Intending to govern admissibility of expert testimony, the MPLA requires that there be a foundation establishing that:

> (1) the opinion is actually held by the expert witness;
> (2) the opinion can be testified to with reasonable medical probability;
> (3) the expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed;
> (4) the expert witness maintains a current license to practice medicine with the appropriate licensing authority of any state of the United States . . .; and
> (5) the expert witness is engaged or qualified in a medical field in which the practitioner has experience and/or training in diagnosing or treating injuries or conditions similar to those of the patient.

W. Va. Code § 55-7B-7(a). If these foundational factors are satisfied, and at the time of alleged malpractice the expert was spending at least sixty percent of her time in clinical practice or teaching in her field of expertise, the statute attempts to create a rebuttable presumption that she is qualified as an expert. *Id.*

Despite this statutory guidance regarding the admissibility of expert testimony in medical malpractice suits, the Supreme Court of Appeals of West Virginia has unambiguously explained that "Rule 702 of the West Virginia Rules of Evidence is the paramount authority for determining whether or not an expert is qualified to give an opinion." *Kiser v. Caudill*, 210 W.Va. 191, 195 (W.Va. 2001) (quoting *Mayhorn v. Logan Med. Found.*, 193 W.Va. 42 (W. Va. 1994) (overruling *Gilman v. Choi*, 185 W.Va. 177 (W.Va. 1990), to the extent that it "indicates that the legislature may by statute determine when an expert is qualified to state an opinion")). Similarly, the Court

concludes that Rule 702 of the Federal Rules of Evidence remains the paramount authority for determining whether or not an expert is qualified to testify in a West Virginia medical malpractice suit heard under the Court's diversity jurisdiction.

That said, under either Rule 702 or the MPLA, "a proper assessment of the competency of an expert medical witness, and the relevancy of that witness' testimony, requires the trial court to focus specifically on the act of medical malpractice which is alleged; and, while there are circumstances in which, for example, a generalist may testify as to the standard of care of a defendant specialist, there are also circumstances in which a generalist or a specialist in another field may not testify as to the standard of care of a defendant specialist." *Gilman*, 185 W.Va. at 181 (citations omitted).

While not determinative of admissibility in federal court, the Court recognizes that state courts applying West Virginia law have held that a medical expert is not required to be board certified in the same medical specialty as the defendant in order to competently testify. *Mayhorn*, 193 W.Va. at 50 (allowing an expert certified in internal medicine to testify regarding the standard of care governing emergency room physicians). The Supreme Court of Appeals of West Virginia has further explained that while not required to share the same specialty, "to qualify a witness as an expert on that standard of care, the party offering the witness must establish that the witness has more than a casual familiarity with the standard of care and treatment commonly practiced by physicians engaged in the defendant's specialty." *Kiser*, 210 W.Va. at 196 (quoting *Gilman*, 185 W.Va. at 181).

*3. Analysis*

Defendant argues that the relevant standard of care is defined by podiatric medicine, and as an oncologist, Dr. Singer does not have the requisite qualifications, experience, familiarity, or training to testify regarding the standard of care governing a podiatrist. In contrast, Plaintiff argues that the alleged malpractice is a failure to diagnose and treat Mrs. Plymale's melanoma, and that there is a generalized standard of care governing all physicians regarding the diagnosis and treatment of cancer that would be familiar to an oncologist and podiatrist alike.

Dr. Singer is board certified in hematology and oncology. Upon review of Mrs. Plymale's medical records including podiatric, dermatological, and oncological care, and based on his experience and training, Dr. Singer concludes that Defendant fell below the standard of care in failing to timely diagnose Mrs. Plymale's melanoma and that that failure reduced her life expectancy. Dr. Singer points to two deviations from the standard of care: (1) failing to recognize the need to timely biopsy a non-healing lesion and to either perform such biopsy himself or refer Mrs. Plymale to a qualified practitioner; and (2) failing to send ulcerative tissue to pathology upon removing it from Mrs. Plymale's foot during surgery.

Defendant points out that there are separate West Virginia requirements for medical licenses, osteopathic medicine licenses, and podiatric medicine licenses. *Compare* W. Va. Code § 30-3-10-(d) *and* W. Va. Code § 30-3-10(b). As a medical doctor with a specialty in oncology, Defendant argues that Dr. Singer "lacks the knowledge of that which a similarly situated podiatrist would employ in a same or similar clinical circumstance." ECF No. 53 at 11. Indeed, Dr. Singer does not claim any expertise in podiatric surgery or podiatric techniques. *See e.g.*, Deposition of Barry L. Singer, M.D. ("Singer Deposition"), pp. 36:12–40:12. According to Defendant, Dr.

Singer cannot offer expert opinion on the standard of care because (1) he lacks familiarity with facts and data that a similarly situated podiatrist would have followed, (2) he is unfamiliar with the practices and methodologies employed by podiatrists, and (3) he is unfamiliar with methodologies for chronic wound management and podiatric surgery. ECF No. 53 at 11.

While accurately portraying the scope of Dr. Singer's expertise, Defendant overstates the scope of Dr. Singer's testimony. Dr. Singer's testimony focuses not on the entire course of treatment offered by Defendant, but on general standards of care purportedly required of all practitioners with respect to the diagnosis of cancer—an area squarely within Dr. Singer's expertise as an oncologist. According to Dr. Singer, presented with a non-healing ulcer that continued over the course of several months, the standard of care for any physician, including a podiatrist, called for biopsy of the ulceration so that cancer could be incorporated into the treating physician's differential diagnosis. *See e.g.*, Singer Deposition, pp. 41:13–42:9. Similarly, Dr. Singer offers that it is "axiomatic" that tissue removed from a patient be sent to pathology for analysis, a rule that again purportedly applies regardless of the specialty of the practitioner. Singer Deposition, pp. 120:4–121:19. To the extent that there is a general standard of care regarding the diagnosis of cancer, Dr. Singer is able to offer expert testimony on the applicable standard of care. Indeed, Defendant's own deposition testimony explains that a podiatrist would look at the same criteria and physical characteristics as a medical doctor to diagnose a melanoma. Deposition of Kirt Miller ("Miller Deposition"), pp. 12:6–13:5.

Furthermore, Plaintiff correctly points out that the MPLA does not require a testifying expert to share the same area of specialization as a defendant. Thus while testifying experts may frequently share the same specialty as a defendant, that commonality is not absolutely required by

the MPLA. Dr. Singer's lack of familiarity with podiatry and the specific techniques employed by Defendant goes to the weight of his testimony, and not its admissibility. Accordingly, Defendant's motion to exclude Dr. Singer's testimony and Defendant's motion for summary judgment are denied.

### B. Defendant's Motions in Limine

Also pending before the Court are Defendant's four Motions in Limine variously seeking exclusion of particular evidence and limitations on the scope of argument at trial. ECF Nos. 63, 64, 65, and 66. In addition to briefing each motion, the parties offered brief oral arguments on each at the November 3, 2014, pretrial conference. Each motion is discussed in turn below.

*1. Motion in Limine to exclude elements of economic loss*

Defendant moved to exclude all elements of economic loss with the exception of the funeral bills and out of pocket expense statement. ECF No. 63. The parties informed the Court at the November 3, 2014, pretrial conference that they have reached an agreement regarding the amount of medical bills to be presented as economic losses. No economic losses beyond those medical bills and funeral expenses will be presented. In light of the parties' agreement, Defendant's Motion in Limine to exclude all elements of economic loss with the exception of the funeral bills and out of pocket expense statement is denied as moot.

*2. Motion in Limine to exclude testimony concerning tissue submitted to pathology*

Defendant moved to exclude reference, argument or criticism concerning the tissue submitted for pathology review. ECF No. 64. Upon request by the Court, on November 3, 2014, Plaintiff identified specific portions of Dr. Singer's testimony that would provide a basis for Dr. Singer to offer an expert opinion regarding tissue sent or not sent to pathology for analysis and

-10-

would support a claim that tissue removal violated the standard of care in some way.

During toe resection surgery, Dr. Miller submitted soft-tissue and bone specimens to pathology for analysis. By his own testimony, he did not also send the ulcerated tissue removed from Mrs. Plymale's foot because it did not appear to him to be abnormal ulcerated tissue. Miller Deposition, pp. 42:17–43:11. According to Dr. Miller, it is within the standard of care to only send specimens of *abnormal* tissue for further analysis. *Id.*

Plaintiff's expert, Dr. Singer, offered in his deposition that the disposal of tissue removed from a patient without sending a sample to pathology for analysis is a deviation from the standard of care applicable to all physicians. Singer Deposition, pp. 118:11–121:19. Dr. Singer, however, is not a surgeon and claims no particular familiarity or experience with surgical methodologies and practices. Singer Deposition, pp. 119:22–120:3.

Defendant argues for the exclusion of reference, argument or criticism relating to the tissue submitted (or not submitted) to pathology for analysis on the grounds that: (1) it is undisputed that Dr. Miller did send abnormal tissue to pathology for review; (2) Dr. Singer's testimony that it was error not to also submit the removed ulcerated tissue is an attempt to introduce a spoliation theme without sufficient support; and (3) Dr. Singer's opinions on the issue are of no matter as he claims no knowledge of the standard of care required of a similarly situated podiatrist. Plaintiff characterizes the motion as frivolous and lacking any good faith basis in law or fact, and requests costs associated with responding.

While Dr. Singer is admittedly not a podiatric surgeon, he is a medical practitioner qualified to offer expert testimony. The scope of his expertise necessarily limits the scope of his testimony, but as characterized, the offered testimony regarding the standard of care when tissue is

-11-

removed from a patient is within the scope of his expertise. Dr. Singer has not offered an opinion narrowly applicable to podiatric surgeons; instead he asserts that "it's an axiom that if you remove tissue from the body and you don't know what it is you don't discard it." Singer Deposition, p. 120:18–120:20. Dr. Singer's expert opinion that there is a general, axiomatic standard applicable to all medical practitioners regarding removal of tissue is admissible; that he is not himself a surgeon offering a more narrowly tailored standard goes to the weight of his testimony and not its admissibility. That said, the Court agrees that any such testimony must be connected to Plaintiff's claim that Dr. Miller's failure to diagnose and treat Mrs. Plymale's non-healing wound amounted to negligence as there does not appear to be any factual or legal basis for spoliation.

Finally, Plaintiff's request for costs associated with this motion is denied. Defendant has raised legitimate challenges to the admission of expert testimony by Dr. Singer. While the Court ultimately agrees with Plaintiff regarding the admissibility of such evidence, Defendant's arguments certainly cannot be characterized as frivolous or made in bad faith.

   3. *Motion in Limine to exclude reference to punitive damages*

Defendant moves to exclude and prohibit plaintiff from any argument, suggestion or inference of a punitive damages recovery. ECF No. 65.

Under West Virginia law, punitive damages are only available "where there is evidence that a defendant acted with wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others to appear or where the legislature so authorizes." *Michael on Behalf of Estate of Michael v. Sabado*, 192 W.Va. 585 (W.Va. 1994) (internal quotations omitted) (citations omitted).

Defendant argues that there is no factual or legal support for wanton, willful, or reckless

conduct, and that Plaintiff's claim sounds only in medical negligence. Defendant maintains that his treatment of Mrs. Plymale was consistent with the standard of care applicable to similarly situated podiatrists. According to Defendant, his regular evaluations and eventual referral upon observing a sudden post-operative change to the ulcer conformed to the standard of podiatric care. He further points out that the melanoma showed no characteristic discoloration or other traditional indicators, a point confirmed by deposition testimony of Plaintiff's expert, Dr. Singer.

Plaintiff maintains that Defendant was not only negligent in failing to earlier diagnose Mrs. Plymale's melanoma, but that his treatment might further be characterized as willful, wanton, or reckless. In support of this assertion, Plaintiff offers that continuing to treat a non-healing ulcer for nearly a year in a patient with no history of foot ulcers or other indication of healing issues without recognizing a need to rule out cancer is willful, wanton, or reckless conduct. Plaintiff further points to Dr. Miller's failure to send the ulcerated tissue removed during surgery to pathology for analysis as reckless conduct. According to Plaintiff's expert, Dr. Singer, the mere appearance of the ulcer on visual inspection would not be enough to rule out a possible cancer diagnosis; this is particularly so given the fact that it was not healing over an extended period of time and Mrs. Plymale had no other medical history explaining the development or persistence of the wound.

Upon review, the Court agrees with Defendant that there does not appear to be sufficient factual or legal support for punitive damages. Plaintiff's own expert, Dr. Singer, admits to having no criticism of Dr. Miller's podiatric care, and Plaintiff has not provided any suggestion of additional evidence that would suggest anything more than negligence. Accordingly, Defendant's Motion in Limine to exclude punitive damages is granted.

*4. Motion in limine to exclude videotaped statement by Mrs. Plymale*

Finally, principally relying on Rule 27 of the Federal Rules of Civil Procedure, Defendant moves to exclude what Defendant characterizes as "the unilaterally conducted, unnoticed, videotaped deposition" of Mrs. Plymale. ECF No. 66.

On June 20, 2013, the day this action was filed, Plaintiff's counsel unilaterally staged a videotaped statement with Mrs. Plymale. Mrs. Plymale passed away shortly thereafter on July 24, 2013. Defendant was not afforded any notice of the interview and only received a transcript of the interview through discovery on December 4, 2013. During the brief statement, Mrs. Plymale addresses the following general topics:

(1) name, age, marital status, and address;
(2) potentially filing a lawsuit for medical malpractice against Dr. Miller and the general basis for that claim;
(3) current health, including level of pain, and prognosis; and
(4) activity level prior to diagnosis.

Rule 27 provides a procedural mechanism through which a party can preserve testimony prior to or coincident to initiating a suit. While compliance with Rule 27 may well have settled the admissibility of the statement, Plaintiff apparently failed to make any attempt to follow the prescribed petition and notice procedures. Instead, Plaintiff argues that exclusion is not warranted based on a failure to follow Rule 27. Plaintiff further offers that the videotaped statement by Mrs. Plymale amounts to a "day-in-the-life" video, demonstrating Mrs. Plymale's condition at the time.

Given that Plaintiff did not make any attempt to conform to Rule 27, that rule certainly cannot render the videotaped statement admissible. Plaintiff has not cited any other evidentiary rule that would render the statement admissible. As argued by Defendant, because Mrs. Plymale is not available to be confronted at trail, her videotaped statement is not admissible as a prior

-14-

statement. Fed. R. Evid. 613. Similarly, because Mrs. Plymale is not available to be confronted at trial and Defendant was afforded no opportunity to develop her statement through direct or cross examination, her videotaped statement is inadmissible hearsay. Fed. R. Evid. 801, 804. Accordingly, without some legal basis for admission, Defendant's Motion in Limine to exclude the videotaped statement is granted.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude Expert Testimony of Barry Singer, M.D., ECF No. 52, and Defendant's Motion for Summary Judgment, ECF No. 54, are **DENIED**, Defendant's Motion in Limine to exclude elements of economic loss, ECF No. 63, is **DENIED** as moot, Defendant's Motion in Limine to exclude testimony on tissue submitted for pathology review, ECF No. 64, is **DENIED**, and Defendant's Motions in Limine to exclude punitive damages, ECF No. 65, and to exclude the videotaped testimony of Mrs. Plymale, ECF No. 66, are **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: November 7, 2014

_____
ROBERT C. CHAMBERS, CHIEF JUDGE